UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CNH CAPITAL AMERICA, LLC,                                               PLAINTIFF

v.                                                     CIVIL ACTION NO. 3:10-CV-00350-CRS

HUNT TRACTOR, INC., et al,                                             DEFENDANTS

**MEMORANDUM OPINION**

CNH Capital America, LLC ("CNH") sued Hunt Tractor, Inc. ("Hunt Tractor") for breach of the parties' security agreement. This Court previously entered judgment for CNH against Hunt Tractor and Scott Hunt, a shareholder in Hunt Tractor.

At issue is CNH's remaining conversion claim against Hunt Tractor's other shareholder, Dominick Pagano. Both parties filed renewed motions for summary judgment. For the reasons below, the Court will deny summary judgment to both parties.

**I.      Facts**

More detailed fact statements may be found in the Court of Appeals ruling as well as this Court's previous order on summary judgment. *See CNH Capital America, LLC v. Hunt Tractor, Inc.*, 568 F. App'x 461 (6th Cir. July 7, 2014); *see also*, Mem. Op. 1 – 7, ECF No. 117. For purposes of the parties' renewed motions for summary judgment, the facts are:

Hunt Tractor is a defunct dealership that sold construction equipment. In 1991, Hunt Tractor entered into the Wholesale Financing and Security Agreement ("WFSA") with CNH's corporate predecessor. Under the WFSA, CNH financed Hunt Tractor in buying Case inventory and equipment. Hunt Tractor granted CNH a security interest "in inventory, equipment, all

1

proceeds of inventory, Hunt Tractor's accounts with CNH, and other collateral requested by CNH." 568 F. App'x at 463; *see also*, WFSA 1, ECF No. 153-1.

In 2007, Scott Hunt borrowed $400,000 from Pagano, his father-in-law, so that he could buy Hunt Tractor, the family business. Scott Hunt became its owner, president, and majority shareholder. Pagano became a minority shareholder.

In March 2008, Hunt Tractor entered into a $500,000 line of credit and took out a $600,000 term loan (the "Bank Loans") with Commonwealth Bank and Trust Company ("Commonwealth Bank"). Pagano granted Commonwealth Bank a security interest in the stock (the "Pledged Stock") kept in his personal securities account for both of the Bank Loans. Under these agreements, Pagano could only be released from his guaranties when Hunt Tractor repaid its obligations on the Bank Loans.

Along with the Bank Loans, Hunt Tractor maintained a checking account at Commonwealth Bank. Commonwealth Bank "swept," or deducted from, the checking account on a daily basis to pay down the Bank Loan balances. Commonwealth Bank held a security interest in the funds deposited in Hunt Tractor's checking account.

By 2009, Hunt Tractor struggled to make payroll and pay CNH. On November 9, Hunt Tractor received a $825,347.00 check from the Kentucky Department of Transportation ("KYDOT") as payment for twelve backhoes. On November 12, Hunt Tractor deposited the KYDOT check in its Commonwealth Bank checking account.

On November 13, Commonwealth Bank swept $348,998.26 from Hunt Tractor's account to pay off the line of credit, resulting in a zero balance. On November 16, Hunt Tractor made a $501,549.87 payment on the term loan via check. On November 17, Hunt Tractor paid

$27,089.77 to Commonwealth Bank, the remaining term loan balance. Upon repayment of the two Bank Loans, Commonwealth Bank released Pagano's Pledged Stock.

Hunt Tractor used the proceeds from the KYDOT sale to pay off both Bank Loans. None of the KYDOT proceeds went to CNH, as the WFSA required.

## II.     Procedural History

CNH prevailed against Hunt Tractor for breach of the WFSA.[1] CNH sued Pagano in his individual capacity on a variety of claims.

This Court granted summary judgment to Pagano on all claims, including conversion. Mem. Op. 1, ECF No. 117. This Court found that CNH failed to show that Pagano exercised dominion over the KYDOT proceeds. *Id.* at 33. This Court did not decide whether CNH could establish any of the other elements of conversion. *Id.*

The Court of Appeals affirmed this Court's grant of summary judgment to Pagano on all claims except the conversion claim. 568 F. App'x at 463. The Court of Appeals held, "The district court erred when it found that Pagano was responsible for ordering the loans to be repaid." *Id.* at 466. Instead, "There remains a genuine issue of material fact as to Pagano's involvement in using the proceeds of the sale to the KYDOT to pay off the loans owed to Commonwealth." *Id.* at 467. Upon finding a genuine issue of material fact for the dominion and control element of conversion, the Court of Appeals remanded the conversion claim. *See id.*[2]

---

[1] CNH sued Scott Hunt and Pagano in their individual capacities for breach of fiduciary duty, fraudulent concealment, conspiracy to commit fraud, preferential conveyance, conspiracy to make a preferential conveyance, fraudulent conveyance, and conversion. CNH sought punitive damages against Pagano and Hunt. CNH also sued Pagano for breach of contract, under the theory of piercing the corporate veil. CNH prevailed against Scott Hunt for breach of guaranty.

[2] The Court of Appeals also ruled that this Court "erred, as a matter of law, when it found that Pagano could not be personally liable for conversion because the proceeds were always maintained within the bank account of Hunt Tractor." *Id.* at 467. The Court of Appeals said,

On remand, both Pagano and CNH filed renewed motions for summary judgment.

### III.     Summary Judgment

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The Court's function is to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

When both parties move for summary judgment, this Court "must evaluate each motion on its merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

### IV.     Conversion Claim

Under Kentucky law, the elements of conversion include:

(1) The plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Ky. Ass'n. of Ctys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005) (quoting 90 C.J.S. *Trover and Conversion* § 4 (2004)).

### V.     Pagano's Renewed Motion for Summary Judgment

---

"[A]n agent of a corporation is personally liable for a tort committed by him though he was acting for the corporation. There are numerous cases holding a corporate officer liable for conversion of personal property by him for the benefit of his corporation." *Id.* (citing *Small v. Bailey*, 356 S.W.2d 756, 757 (Ky. 1962)). The Court of Appeals concluded, "Thus, if Pagano was responsible for the transfer of the funds, and was therefore acting on behalf of Hunt Tractor, he could be personally liable for the tort of conversion." *Id.*

4

Pagano raises three arguments in his renewed motion for summary judgment. The Court addresses each in turn, reviewing all undisputed facts and drawing all inferences in favor of CNH, the non-moving party. *See B.F. Goodrich Co.*, 245 F.3d at 593.

### A. Whether CNH had legal title and the right to possess the KYDOT proceeds.

#### 1. Whether Hunt Tractor defaulted on its Bank Loans, entitling Commonwealth Bank to the KYDOT proceeds.

Pagano asks this Court to grant summary judgment because CNH cannot prove title to the KYDOT proceeds. Def.'s Mem. in Supp. of Mot. Summ. J. 20 – 24, ECF No. 129-1. Also, Pagano asks this Court to grant summary judgment because CNH cannot prove the right to exclusively possess the KYDOT proceeds. *Id.* The Court addresses these elements together because they are logically related and because Pagano combined them in his renewed motion.

In a conversion claim, the plaintiff must establish title to the converted property. *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt. LLC*, 941 F.Supp.2d 807, 827 (E.D. Ky. 2013) *(citing Gateway Auto Auction, Inc. v. Gen. Motors Acceptance Corp.*, 398 S.W.2d 498, 499 (Ky. 1966)). Likewise, the plaintiff must establish "the immediate right to possession of the article converted." 18 C.J.S. *Conversion* § 69 (2004).

Article IX of the Uniform Commercial Code ("UCC") addresses the priority of security interests in a bank deposit account. *See* KRS § 355.9-327. When a bank maintains a deposit account with a security interest, the bank's security interest prevails over another secured party's conflicting interest. *See id.* § 355.9-327(3); *see also*, *Ky. Highlands Inv. Corp. v. Bank of Corbin, Inc.*, 217 S.W.3d 851, 855 (Ky. 2006) (discussing the "super-priority" status of a depository bank over secured creditors).

5

Article IX of the UCC also addresses secured parties' rights upon default. *See* KRS § 355.9-601 – 28. "After default, a secured party has the rights provided in this part of this article…." *Id.* § 355.9-601(1). If a bank holds a depository security interest, "in any event after default," the bank may exercise its right of setoff by applying the deposit account balance to the obligation secured by the deposit account. *See id.* § 355.9-607(1)(d); *see also*, *Acuity, a Mut. Ins. Co. v. Planters Bank, Inc.*, 362 F.Supp. 2d 885, 889 (W.D. Ky. 2005); *and*, *Ferguson Enters. Inc., v. Main Supply, Inc.*, 868 S.W.2d 98, 99 (Ky. Ct. App. 1993).

Pagano argues that CNH cannot prove title or the right to exclusively possess the KYDOT proceeds because Commonwealth Bank, as a holder of a depository security interest, had priority over CNH's conflicting security interest. *See* KRS § 355.9-327(3). Pagano argues that CNH cannot prove legal title to the proceeds because Commonwealth Bank would have prevailed in a priority dispute. Def.'s Mem. in Supp. of Mot. Summ. J. 21 – 23, ECF No. 129-1. Likewise, Pagano argues that CNH cannot prove the right to exclusively possess the KYDOT proceeds because Commonwealth Bank would have had a right to possess the funds in a priority dispute. *Id.* In support, he offers the Commercial Security Agreement on the term loan between Hunt Tractor and Commonwealth Bank, which granted the Bank a "Blanket Lien on all Business Assets." Commw. Com. Sec. Agreement 1, ECF No. 129-13.

However, CNH responds that it can prove title and the right to possession[3] because Commonwealth Bank could only have prevailed over CNH in a priority dispute if Hunt Tractor defaulted on its Bank Loans. Pl.'s Resp. in Opp. to Def.'s Mot. Summ. J. 22 – 25, ECF No. 145.

---

[3] CNH argues that it only needs to prove the right to possession, not *exclusive* possession. On the other hand, "the property converted must be property which the plaintiff has the exclusive right to control." *Scatuorchio Racing Stable*, 941 F.Supp.2d at 827 (citing *Manhattan Accocs. v. Rider*, No. 3:02-CV-265-S, 2002 WL 1774056, at *2 (W.D. Ky. Aug. 1, 2002)). "In order for a conversion to occur, the property converted must be property which the plaintiff has the exclusive right to control." 13 Ky. Prac. Tort L. § 8:4 (2014 ed.).

CNH contends that it had a purchase money security interest in its collateral and proceeds. Pl.'s Mem. in Supp. of Mot. Summ. J. 10, ECF No. 146. Additionally, CNH argues that Commonwealth Bank only had superior rights to the deposit account under § 355.9-607 if Hunt Tractor defaulted on either of the Bank Loans. Pl.'s Resp. in Opp'n. to Def.'s Mot. Summ. J. 23 – 24, ECF No. 145. CNH argues that Commonwealth Bank had no right to setoff the funds without a default. *Id.*

The Court agrees with CNH. Commonwealth Bank could only have prevailed over CNH if Hunt Tractor defaulted on the Bank Loans. This Court has already found that CNH held a purchase money security interest in the KYDOT proceeds, and Hunt Tractor breached the WFSA with CNH. Mem. Op. 8, ECF 117. While § 355.9-327(3) does give "super-priority" to depository banks over secured creditors, a bank's right to setoff deposit funds under § 355.9-607(d) arises "after default."[4] *See* KRS § 355.9-607(d).

In order for Commonwealth Bank to have a superior title to the funds over CNH, Pagano must show that Hunt Tractor defaulted on at least one of the Bank Loans. Similarly, in order for Commonwealth Bank to have the right to exclusively possess the funds over CNH, Pagano must show that Hunt Tractor defaulted on at least one of the Bank Loans. Pagano offers no evidence that Hunt Tractor was in default on either of the Bank Loans.

Commonwealth Bank's Phil Cooper testified that Hunt Tractor never defaulted on either Bank Loan. Cooper Dep. 29, 31, ECF No. 153-3. Cooper also testified that Commonwealth Bank never exercised a right of setoff on Hunt Tractor's deposit account. *Id.* at 40 – 41. Pagano testified that he did not know whether Hunt Tractor had defaulted on the line of credit. Pagano Dep. 71, ECF No. 146-11.

---

[4] The UCC does not define default. 4 Ky. Prac. Methods of Prac. § 11:49.

7

While Commonwealth Bank may have prevailed over CNH in a priority dispute over the funds, priority disputes only arise upon default. Commonwealth Bank only had a right to setoff the funds in the checking account if Hunt Tractor defaulted. When the Court views the evidence in the light most favorable to CNH, Pagano has not met his burden of showing that "there is no genuine issue of material fact" that Hunt Tractor defaulted on its Bank Loans, nor has Pagano shown that "there is no genuine issue of material fact" that Commonwealth Bank exercised a right of setoff against the funds.

### 2. Whether an "event of default" occurred on the Bank Loans, entitling Commonwealth Bank to the KYDOT proceeds.

In the alternative, Pagano argues that CNH cannot prove title and the right to possess the funds because when he revoked his Guaranty, an "Event of Default" occurred, entitling Commonwealth Bank to full repayment of both Bank Loans. Def.'s Mem. in Supp. of Mot. Summ. J. 22 – 23, ECF 129-1. He cites the promissory notes for the Bank Loans which state that "an event of default" occurs when the guarantor revokes the guaranty of indebtedness. *See* Line of Credit Promissory Note 1, ECF No. 129-11; *and*, Term Loan Promissory Note 1, ECF No. 129-12.

CNH responds that Pagano could not cause Hunt Tractor to default because his guaranty could only be revoked by payment of the Bank Loans in full. Pl.'s Reply in Supp. of Mot. Summ. J. 6 – 7, ECF No. 153. CNH points to the Commercial Guaranty between Commonwealth Bank and Pagano which states:

> **THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED, AND TERMINATED.**

8

Commonw. Bank Com. Guar. 1, ECF No. 153-7 (Caps and bold in original). Likewise, Cooper testified that an "Event of Default" for "Events Affecting Guarantor" did not cause Hunt Tractor to default on either Bank Loan. Cooper Dep. 30, 38, ECF No. 153-3.

Viewing this evidence in the light most favorable to CNH, Pagano has not met his burden of proving that CNH cannot prove title and right to possession. Even if revoking the guaranty created an event of default triggered Commonwealth Bank's right to setoff, that event of default occurred at the very earliest on November 18 when Pagano requested that Commonwealth Bank release his Pledged Stock. *See* Mem. Op. 6, ECF No. 117. This request occurred after Commonwealth Bank had already swept the account on November 13, and after Hunt Tractor paid the balance for the term loan on November 17. *See id.* Commonwealth Bank could not have exercised a right of setoff against the deposit account upon this purported default because its collateral, Hunt Tractor's business assets, was no longer in the deposit account.

When the Court views the facts and inferences in the light most favorable to CNH, Pagano has not met his burden of proving that "there is no genuine issue of material fact" on either the title or the right to possession elements. He has not shown that "there is no genuine issue of material fact" that Commonwealth Bank had superior title to the funds over CNH. Likewise, he has not shown that "there is no genuine issue of material fact" that Commonwealth Bank had a superior right to possess the funds over CNH.

Thus, the Court will deny Pagano's motion for summary judgment with regard to the title and right to possess elements of the conversion claim.

**B. Whether CNH consented to, ratified, or is otherwise estopped from asserting a conversion claim.**

Next, Pagano asks this Court to grant summary judgment because CNH waived, ratified, or is otherwise estopped from recovering for conversion. Def.'s Mem. in Supp. of Mot. Summ. J. 24 – 27, ECF No. 129-1.

A plaintiff who consents to a property transfer cannot recover for conversion. *Anderson v. Pine South Capital, LLC.*, 177 F.Supp. 2d 591, 603 (W.D. Ky. 2001) (citing *Gross v. Citizen Fid. Bank Winchester*, 867 S.W.2d 212, 214 (Ky. Ct. App. 1993)).

Pagano argues that CNH consented to Hunt Tractor paying its business expenses instead of promptly remitting proceeds to CNH. Def.'s Mem. in Supp. of Mot. Summ. J. 26, ECF No. 129-1. CNH "knew of and acquiesced in these payment delays." *Id.* at 25. First, he points to CNH credit manager Mike Litke, who testified that Hunt Tractor had been charged interest on at least one occasion for paying remittances late. Litke Dep. 27, 32 – 33, 36, 127, ECF No. 129-7. Second, he points to the CNH's Accounting Advice worksheets which detail the fees CNH charged Hunt Tractor for late payments. Acct. Advice 1 – 5, ECF No. 129-8. Third, he points to Scott Hunt's deposition in which he testified that CNH regularly audited Hunt Tractor. Scott Hunt Dep. 32 – 33, ECF No. 129-3.

Viewing this evidence in the light most favorable to CNH, the examples Pagano points to at best support the proposition that CNH knew Hunt Tractor was late in paying its remittances and charged interest accordingly. Even though CNH may not have objected to Hunt Tractor remitting its proceeds late on every occasion, the fact that CNH charged interest in those instances does not necessarily mean that CNH consented to late payments.

CNH's decision to charge interest for late payments likely indicates that CNH disapproved of Hunt Tractor paying its remittances late, rather than consenting to pay a third-party creditor with the funds. Indeed, Litke testified that the auditor charged interest when Hunt

10

Tractor paid its remittances late as a "penalty." *See* Litke Dep. 33, ECF No. 129-7. Pagano has not demonstrated how CNH's decision to charge Hunt Tractor a penalty for late remittances amounts to a showing that there is "no genuine issue of material fact" that CNH consented to Hunt Tractor paying Commonwealth Bank with the KYDOT proceeds. Even if CNH consented to late payments by its decision to charge interest, Pagano has not shown that CNH explicitly or implicitly consented to a third-party creditor receiving payments while CNH received nothing.

Thus, the Court will deny Pagano's motion for summary judgment with regard to the consent defense.

### C. Whether Pagano's act was the legal cause of CNH's loss.

Finally, Pagano asks this Court to grant summary judgment because CNH cannot prove that he is the legal cause of the loss of the KYDOT proceeds. Def.'s Mem. in Supp. of Mot. Summ. J. 27, ECF No. 129-1.

Pagano argues that CNH cannot prove the legal cause element of conversion because he "committed no affirmative act in furtherance of a conversion." *Id.* Pagano argues that conversion liability requires an "affirmative act" beyond "mere words or declarations." *Id.* at 27 – 28. He cites no Kentucky case that supports his argument. Nor does he point to any specific record facts to meet his burden of proving "there is no genuine issue of material fact" as to whether he committed an "affirmative act" necessary to constitute a conversion.

Pagano also argues that he cannot be the legal cause of CNH's loss[5] because Commonwealth Bank "automatically" swept $348,988 from Hunt Tractor's checking account to

---

[5] Pagano does not make any argument that he is not the "legal cause" of CNH's loss for the amount of $528,639.64, paid by Hunt Tractor in two checks to Commonwealth Bank. He says, "This part of Pagano's renewed summary judgment motion pertains solely to the first of these transactions, i.e., the $348,988 Commonwealth Bank automatically swept from Hunt Tractor's account to pay the Line of Credit debt." Def.'s Mem. in Supp. of Mot. Summ. J. 29,

11

pay the line of credit debt. *Id.* at 28 – 29. He points to Hunt Tractor's bank statement as evidence that on November 13, 2009, Commonwealth Bank automatically swept the account, and the result was a zero balance for the line of credit debt. *See id.* at 29.

Viewing Hunt Tractor's account statements in the light most favorable to CNH, the "sweep" of the account on November 13, 2009 was far larger than the other times Commonwealth Bank swept the account that month.[6] None of the other "automatic" sweeps of the account exceeded $50,000, and the November 13 sweep was nearly eight times the amount of the next-greatest sweep. Even if the November 13 sweep was "automatic," it differed in scope from the other sweeps that month.

Given that Pagano's involvement in paying off the Commonwealth Bank Loans is a genuine issue of material fact, and given that the "automatic" sweep on November 13 differed from the other sweeps of the account that month, Pagano has not met his burden of proving that there is no genuine issue of material fact that the November 13 sweep was an automatic result of Commonwealth Bank's actions, not his.

Thus, the Court will deny Pagano's motion for summary judgment on the legal cause element of conversion.

### VI. CNH's Renewed Motion for Summary Judgment

---

ECF No. 129-1. Since he asks this Court to grant summary judgment only with regard to the $348,988 paid by the Commonwealth Bank sweep, the Court does not address whether he could be the "legal cause" for the other payments.

[6] Specifically, under the Transaction Information, the "Sweeps to LOC" included payments to Commonwealth Bank in the amounts of $10,107.45 (November 3), $11,104.67 (November 4), $5,281.13 (November 5), $42,391.42 (November 7), $7,106.50 (November 9), $17,969.24 (November 11), and $13,612.62 (November 12). Acct. Statement 1 – 3, ECF. No. 129-28.

CNH raises two arguments in its renewed motion for summary judgment.[7] The Court addresses each in turn, reviewing all agreed facts and drawing all inferences in favor of Pagano, the non-moving party. *See B.F. Goodrich Co.*, 245 F.3d at 593.

### A. Whether Pagano is liable for conversion through direct benefit.

CNH asks this Court to grant summary judgment because "Pagano personally benefitted from the conversion through repayment of his Guaranty." Pl.'s Mem. in Supp. of Mot. Summ. J. 11, ECF No. 146.

The law of the case doctrine precludes this Court from reconsidering "issues decided at an early stage of litigation, either explicitly or by necessary inference from the disposition." *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1071 (6th Cir. 2014). Under the doctrine of the law of the case, this Court may revisit its own prior decision, but "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *see also*, *Hanover Ins. Co. v. American Eng'g., Co.*, 105 F.3d 306, 312 (6th Cir. 1997). Additionally, this Court may reconsider a ruling if a party raises substantially different evidence at a later trial, or when a controlling authority decides a contrary view of law. *Hanover Ins. Co.*, 105 F.3d at 312 (citations omitted). Finally, the Court may raise

---

[7] CNH also mentions that in the automobile industry, an "out of trust" sale constitutes a conversion. Pl.'s Mem. in Supp. of Mot. Summ. J. 11, ECF No. 146. An "out of trust" sale occurs when a dealer sells inventory without paying the secured lender who financed the inventory. CNH appears to concede that this argument depends on a genuine issue of material fact (whether "Pagano participated in Hunt Tractor's conversion"), *id.* at 11, and thus, the Court does not address it.

the doctrine *sua sponte* when faced with "the prospect of redoing a matter once decided."

*Arizona v. California*, 530 U.S. 392, 412 (2000).[8]

In the 2013 grant of summary judgment to Pagano on the fraudulent conveyance claim, this Court recognized that Pagano benefitted from release of his guaranty. Mem. Op. 27, ECF No. 117. On the conversion claim, this Court said:

> CNH argues that Pagano exercised dominion over the proceeds from the KY DOT equipment sale because he benefitted from the conveyance at issue by having his obligations to Commonwealth Bank released. However, CNH cites to no Kentucky case for such an expansive interpretation of what it means to exercise dominion over funds. Without any evidence that Kentucky courts would interpret the phrase 'exercised dominion over the property,' to mean 'benefitted from another's exercise of dominion over the property,' the court will not extend Kentucky law in that manner.

*Id.* at 33.[9]

This Court explicitly declined to "extend Kentucky law" on conversion liability when an individual "benefitted from another's exercise of dominion over the property." *Id.* CNH has not argued that extraordinary circumstances require this Court to revisit its prior decision. CNH has not offered substantially different evidence, nor has CNH offered that a controlling authority

---

[8] Pagano argues that CNH seeks to evade the law of the case, but points to the Court of Appeals ruling rather than this Court's previous ruling on summary judgment. Pagano argues that whether he benefitted from the release of his guaranty goes to the dominion and control element of conversion which the Sixth Circuit held was a genuine issue of material fact for a jury to decide. Def.'s Resp. in Opp. to Pl.'s Mot. Summ. J. 7 – 8, ECF No. 150. However, the Court of Appeals did not explicitly address CNH's "benefit" theory of conversion. *See* 568 F. App'x at 466. Even if Pagano did not properly raise the issue, this Court may address it *sua sponte*. *See Arizona*, 530 U.S. at 412.

[9] On March 30, 2015, this Court ruled on CNH's motion to strike Pagano's renewed motion for summary judgment. Mem. Op. 2, ECF No. 141. This Court referred to CNH's argument raised in its original motion for summary judgment regarding whether Pagano exercised dominion over the proceeds because he benefitted from the transfer. *Id.* This Court said, "We rejected CNH's theory that Pagano exercised dominion over the proceeds because he benefitted from the conveyance at issue." *Id.*

decided a contrary view of law. Absent a showing that this Court's previous ruling was clearly erroneous and would work a manifest injustice, this Court will not revisit the decided issue.

Thus, the Court will deny summary judgment to CNH on whether Pagano could be liable for conversion because he directly benefitted from the conveyance.

### B. Whether Pagano is liable for conversion by subsequent transfer of the Pledged Stock.

CNH asks this Court to grant summary judgment because Pagano can be liable for conversion for receiving the Pledged Stock as a second transferee of converted property. Pl.'s Mem. in Supp. of Mot. Summ. J. 15, ECF No. 146.

Under the mandate rule, this Court must comply with a remand mandate as dictated by the Court of Appeals. *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). This Court must "implement both the letter and the spirit of the appellate court's mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Olszewski*, 454 F.3d at 538 (internal citations omitted).

The Court of Appeals held that this Court erred in finding that Pagano was responsible for ordering the loans to be repaid. 568 F. App'x at 466. Under the Court of Appeals mandate, "there remains a genuine issue of material fact as to Pagano's involvement in using the proceeds of the sale to the KYDOT to pay off the loans owed to Commonwealth." *Id.*

According to CNH, "Hunt Tractor's improper payment of CNH's proceeds to Commonwealth Bank was step one and transfer one of the conversion." Pl.'s Reply in Supp. of Mot. Summ. J. 13, ECF No. 153. Then, "In exchange for CNH's proceeds, Commonwealth Bank transferred Pagano's Pledged Stock back to Pagano. These transfers are obvious, traceable and constitute conversion by Pagano in receipt of the Pledged Stock." Pl.'s Mem. in Supp. of Mot. Summ. J. 15, ECF No. 146.

15

The "step one," however, contradicts the Court of Appeals' explicit holding that whether Pagano was involved in using the proceeds of the sale of the KYDOT to pay off the loans owed to Commonwealth remains a genuine issue of material fact. *See* 568 F. App'x at 466. Therefore, CNH has not met its burden of proving that "there is no genuine issue of material fact" regarding the Pledged Stock because whether Pagano's alleged involvement in the conversion tainted the stock transfers depends upon a genuine issue of material fact.

Thus, the Court will deny summary judgment to CNH on its claim that Pagano is liable as a second transferee of the Pledged Stock.

### I.     Conclusion

The Court will deny summary judgment to both parties on the conversion claim. An order in conformity herewith will be entered this date.

September 18, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**